IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION** |
| | ) | **RE ORDER STRIKING** |
| vs. | ) | **JURY TRIAL** |
| | ) | |
| Charles Edward Jardee, | ) | |
| | ) | Case No.  4:09-mj-091 |
| Defendant. | ) | |

On January 29, 2010, the Government filed a motion seeking an order setting this matter for a court trial on the grounds that defendant has no right to a jury trial.  The court issued a text order granting the Government's motion (Docket No. 13), stating it would be followed by an explanatory opinion.  What follows is the court's explanation for striking the jury trial in this case.

The Sixth Amendment of the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy a right to a speedy and public trial, by an impartial jury . . . ." U.S. Const. amend. VI.  Despite the breadth of this language, it has long been construed as applying only to "serious" offenses and not "petty offenses."  See, e.g., Lewis v. United States, 518 U.S. 322, 325-326 (1996) ("Lewis"); Duncan v. Louisiana, 391 U.S. 145, 15 (1968); United States v. Ramsey, 871 F.2d 1365, 1367 (8th Cir. 1989).[1]

In determining which offenses are "petty" and not "serious," the Supreme Court initially focused upon the nature of the offense and whether a jury trial was allowed at common law.  Lewis, 518 U.S. at 325-326; Blanton v. North Los Vegas, 489 U.S. 538, 541 (1988) ("Blanton").  Finding

---

[1] The U.S. Const. art. 3, § 2, cl.3 similarly provides that "[t]he trial of all crimes, save impeachment, shall be by jury . . . ."  With respect to the issue here, there is no difference in the application of the two provisions. See, e.g., District of Columbia v. Clawans, 300 U.S. 617, 661-662 (1937).

1

that approach to be unworkable, particularly when there were no common law antecedents for the offenses in question, the Court looked for more "objective indications of the seriousness with which society regards the offense," Blanton, 489 U.S. at 541 & n.5 (1988) (quoting Frank v. United States, 395 U.S. 147, 148 (1969), and decided upon the following framework:

- To determine the "seriousness" of an offense, courts should look to the judgment of the legislature creating the offense, which normally is expressed by the maximum penalties it fixes for the offense. Lewis, 518 U.S. at 326; Blanton, at 541. The "judiciary should not substitute its judgment as to seriousness for that of a legislature, which is far better equipped to perform the task . . . ." Lewis, 518 U.S. at 326 (quoting Blanton, 489 U.S. at 541).

- When considering the maximum penalties, the most relevant objective factor for determining "seriousness" most often will be the maximum term of imprisonment because of the severity of the loss of liberty that incarceration entails relative to most other penalties. See, e.g., Lewis, 518 U.S. at 327; United States v. Nachtigal, 507 U.S. 1, 3-4 (1993) (per curiam) ("Nachtigal"); Blanton, 489 U.S. at 541-542. "Indeed, because incarceration is an 'intrinsically different' form of punishment, [citation omitted], it is the most powerful indication of whether an offense is 'serious.'" Blanton, 489 U.S. at 542.

- Offenses providing for a maximum term of imprisonment of six months or less are considered presumptively "petty." Lewis, 518 U.S. at 326. Offenses providing for a maximum jail term greater than six months in all cases are deemed "serious" and a jury trial is required. Blanton, 489 U.S. at 542. "Petty" in this context, however,

does not mean inconsequential, given that even six months' incarceration is a severe deprivation of liberty.  Id.. at 542-543.  A number of factors went into the Court drawing the presumptive line at six months' imprisonment.  In Blanton, the Court stated:

> As for a prison term of six months or less, we recognized that it will seldom be viewed by the defendant as "trivial" or "petty." [citation omitted]  But we found that the disadvantages of such a sentence, "onerous as though they may be, may be outweighed by the benefits that result from speedy and inexpensive nonjury adjudications." [citation omitted]

Id.; see also Baldwin v. New York, 399 U.S. 66, 71-74 (1970) (considering existing state practices for the prosecution of petty offenses as well as the administrative convenience of a more speedy and less-expensive adjudication); District of Columbia v. Clawans, 300 U.S. 617, 626-629 (1937) (discussing what offenses were triable without a jury under English and colonial practice at the time of the adoption of the Constitution).

- While the maximum term of imprisonment will normally be the determining factor, the Court left open the possibility that a jury trial may be required for an offense for which the maximum term of incarceration is six months or less if a legislature has enacted additional penalties which, "viewed in conjunction with incarceration, are so severe that they clearly reflect a legislative determination that the offense in question is a 'serious' one." Blanton, 489 U.S. at 543; accord Lewis, 581 U.S. at 326.

The defendant in this case is charged with the offense of assault by striking, beating, or wounding in violation of 18 U.S.C. § 113(a)(4).  The offense carries a maximum penalty of six

3

months' imprisonment and/or a $5,000 fine, making it a Class B misdemeanor and a "petty offense" under federal statutory law. E.g., United States v. Chavez, 204 F.3d 1305, 1311 (11th Cir. 2000) ("Chavez"); 18 U.S.C. §§ 19 (definition of petty offense), 113(a)(4) (term of imprisonment), 3571(b)(6) (fine), & 3559(a)(7) (definition of Class B misdemeanor). Under the Supreme Court cases discussed above, the defendant is clearly not entitled to a jury trial if the foregoing are the only relevant penalties. Lewis, 518 U.S. at 325-326; Nachtigal, 507 U.S. at 2-6; Chavez, 204 F.3d at 1317.

Defendant argues, however, there is an additional penalty that must be considered. That is, a conviction here would qualify as "a misdemeanor crime of domestic violence" and result in a prohibition against possessing firearms under 18 U.S.C. § 922(g)(9) that likely would last a lifetime. See United States v. Hayes, __ U.S. __, 129 S.Ct. 1079 (2009) (addressing offenses that are subject to § 922(g)(9)); Chavez, 204 F.3d at 1313-1314 (stating that the violation of 18 U.S.C. § 113(a)(4) in that case likely would meet the threshold definition of a crime of domestic violence under 18 U.S.C. § 921(a)(33) and be subject to the provisions of § 922(g)(9)). Defendant argues this additional deprivation of rights makes the prosecution of this case sufficiently "serious" so as to entitle him to a jury trial under the Sixth Amendment.

There are conflicting decisions on this issue. Compare Chavez, 204 F.3d at 1313-1314 (the firearms ban under § 922(g)(9) does not impose sufficient additional penalty to invoke the Sixth Amendment right to jury trial); United States v. Combs, No. 8:05CR271, 2005 WL 3262983, at *2-3 (D. Neb. Dec. 1, 2005) (same); with United States v. Smith, 151 F. Supp. 2d 1316 (N.D. Okla. 2001) (contra). The parties have not cited any Eighth Circuit decision directly on point. However, in concluding that a lifetime firearms prohibition does add a sufficiently serious penalty so as to invoke

4

the right to a jury trial, the federal district court in United States v. Smith, supra, relied, in substantial part, upon the Eighth Circuit's decision in Richter v. Fairbanks, 903 F.2d 1202 (8th Cir. 1990) ("Richter").

In Richter, the Eighth Circuit held that a state habeas petitioner was entitled to relief because he had been denied a jury trial in his prosecution for a third DUI offense. Even though the maximum term of imprisonment for the third DUI offense was only six months, state law required, in addition, the suspension of all driving privileges for fifteen years. The court held this additional penalty made the offense sufficiently serious so as to invoke the petitioner's Sixth Amendment rights and granted habeas relief. Richter, 903 F.2d at 1204-1206.

This case, however, presents a somewhat different situation. In fact, it is one that does not neatly fit within the framework established by the Supreme Court for determining when an offense is "petty" and not "serious."

As noted earlier, the Supreme Court has instructed that courts should look to the penalties established by the legislature creating the offense for the determination of "seriousness" and not substitute its judgment for that of the legislature's. In Richter, the 15-year mandatory suspension of driving privileges applied specifically to the third-offense DUI and reflected some judgment by the Nebraska legislature about the seriousness of the offense, even though it did not reclassify the offense.[2]

Here, the firearms prohibition in question applies to any misdemeanor crime of domestic violence meeting certain requirements - federal, state, or local. It is not directed specifically to the

---

[2] The panel decision in Richter was not unanimous. The dissenting justice argued that the court should have deferred to the Nebraska legislature's judgment in not reclassifying the offense as a more serious one requiring a jury trial. 903 F.2d at 1206 (Beam, J., dissenting).

offense of assault by striking, beating, or wounding under § 113(a)(4), which also encompasses assaults other than "domestic violence." Viewed in this light, it is difficult to look upon the firearms prohibition as representing a specific judgment as to the "seriousness" of the offense of assault under § 113(a)(4) -at least not the kind of judgment contemplated by the Supreme Court cases cited above. Further, the fact the firearms prohibition does not fit neatly within the Supreme Court's framework for evaluating "seriousness" based upon legislatively established "maximum penalties" is even more clear for state and local petty assault crimes that encompass domestic violence, given that the "legislature" that enacted the firearms prohibition is Congress and not the state or local legislatures creating the offenses and establishing the maximum penalties.

If the only thing that is relevant to the determination of "seriousness" of the petty offense assault crimes that are the subject of § 922(g)(9) are the maximum penalties established for each offense, as a strict reading of the Supreme Court cases cited above would suggest, then the firearms prohibition is simply a collateral consequence and does not affect whether the offenses are "serious" for purposes of the Sixth Amendment. Cf. Lewis, 518 U.S. at 325-330 (concluding that the relevant factor in determining "seriousness" was the legislatively established penalty and the fact a particular defendant may face more than six months' incarceration on account of multiple petty offenses being charged in a single prosecution did not alter the analysis for Sixth Amendment purposes).

In this case, it does not make any difference whether the court stops here or proceeds forward to consider the impact of the firearms prohibition upon the determination of "seriousness." In considering the firearms prohibition, the most important consideration is whether it substantially adds to the severity of the deprivation of liberty resulting from a jail term of six months such that it elevates the overall "seriousness" of the offense. See Lewis, 581 U.S. at 326; Blanton, 489 U.S.

at 543. And, here, while there is no question that a lifetime prohibition against possessing weapons is a substantial infringement upon one's rights, see District of Columbia v. Heller, __ U.S. __, 128 S.Ct. 2783 (2008), it is not of the same order of magnitude as the severe deprivation of liberty that results from six months' incarceration - even without consideration of the attendant consequences that may follow from imprisonment for that length of time, e.g., humiliation, public opprobrium, and possible loss of a employment. In other words, although it may come right up to it, the potential lifetime firearms prohibition does not "puncture the 6-month incarceration line." Blanton, 489 U.S. at 543.

Also, Congress was aware of the lack of entitlement to a jury trial for some of the misdemeanor offenses for domestic violence that it included within the prohibition imposed by § 922(g)(9). This is clear from the statutory language that defines "crimes of domestic violence" as set forth in part in § 921(a)(33)(B)(i)(II). United States v. Chavez, 204 F.3d at 1313- 1314. The fact that Congress chose to include such offenses, notwithstanding the lack of a right to a jury trial, is some expression of legislative judgment about the relative "seriousness" of the offenses, albeit not the specific legislative judgment contemplated by the Supreme Court cases cited above, and is confirmatory of judgment that the firearms prohibition does not cause the six-month presumptive line to be exceeded. See id.[3]

Given the foregoing, and the Supreme Court's instruction that primary emphasis be placed on the maximum term of imprisonment authorized for the offense since it is the "best indicator" of

---

[3] In Chavez, the Eleventh Circuit relied substantially upon this legislative intent in concluding that firearms prohibition imposed by § 922(g)(b) did not elevate the "seriousness" of a prosecution for assault under § 113(a)(4) so as to invoke the Sixth Amendment right to a jury trial. Although this was a pre-Heller case and the Eleventh Circuit up to that point in time had not recognized the Second Amendment as creating a right to possess firearms apart from that reasonably related to a state-run militia, the court noted in a footnote that it would have reached the same conclusion even if the Second Amendment had created a personal right to bear firearms. 204 F.3d at 1313 n.5.

whether an offense is "petty" or serious," Lewis, 518 U.S. at 326, the court concludes that the firearms prohibition imposed by § 922(g)(9) does not fundamentally alter the seriousness of otherwise petty offenses for assault, whether under § 113(a)(4) or under comparable state or local statutes, so as to invoke the right to a jury trial under the Sixth Amendment.[4]

Dated this 12th day of February, 2010.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr.
United States Magistrate Judge

---

[4] In light of this determination, the court need not address the Government's other argument, which is that the defendant is already subject to a lifetime weapons prohibition because of, among other things, a prior felony conviction. While this argument has some superficial appeal, it is doubtful that the individual circumstances of the defendant are relevant. Cf. Lewis, 518 U.S. 328-330. Also, there may be other problems. For example, what would be the consequence of the prior conviction being reversed? Is the prior felony conviction only relevant if it is final and non-appealable?